# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Ryan Ransom, | * | |
| | | Case No. 2:20-cv-3824 |
| On behalf of himself and those | * | |
| similarly situated, | | Judge |
| | * | |
| Plaintiff, | | Magistrate Judge |
| v. | * | |
| | | **JURY DEMAND ENDORSED HEREON** |
| Burrows Paper Corporation | * | |
| 2000 Commerce Center Drive | | |
| Franklin, Ohio 45005, | * | |
| | | |
| & | * | |
| | | |
| Novolex Holdings, LLC | * | |
| 101 East Carolina Avenue | | |
| Hartsville, SC 29550, | * | |
| | | |
| Defendants. | * | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND OHIO LAW

Now comes Plaintiff Ryan Ransom ("Plaintiff" or "Ransom"), by and through undersigned counsel, individually and on behalf of other members of the general public similarly situated, for his Collective and Class Action Complaint against Burrows Paper Corporation ("BPC") and Novolex Holdings, LLC ("Novolex") (collectively BPC and Novolex hereinafter "Defendants") for their failure to pay employees overtime wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03 ("the Ohio Wage Act"); the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15; and Article II, Section 34a of the Ohio Constitution (the Ohio Wage Act, the OPPA, and Article II, Section 34a of the Constitution will be referred to collectively as "the

Ohio Acts"). Named Plaintiff's FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b), while the Ohio Acts claims are asserted as a class action under Rule 23. The following collective and class action allegations are based on personal knowledge as to the Named Plaintiff's own conduct and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I.      JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FLSA, 29 U.S.C. § 216(b).

2.      This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio (the Ohio Acts) over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy. Further, Defendant Novolex purposefully availed itself of this Court's jurisdiction and venue when it elected to jointly operate and/or control the daily activities and terms and conditions of employment of Named Plaintiff and others similarly situated (as outlined more fully below).

3.      Venue is proper in this forum pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to their claims occurred in the Southern District of Ohio, Defendants maintain one of their facilities in and/or Defendants otherwise conducted substantial business in the Southern District of Ohio, Eastern Division.

## II.      FACTUAL ALLEGATIONS

### A.  Named Plaintiff Ryan Ransom

4.      Plaintiff Ransom is an individual, United States citizen, and resident of this judicial district.

5.     Ransom worked as an hourly, non-exempt "employee" of Defendants as defined in the FLSA and the Ohio Acts primarily in the position of packer/laborer from early October, 2019 until his departure in April, 2020.

6.     At all times relevant, Ransom primarily performed non-exempt duties for Defendants, including producing paper boxes for fast food companies and other restaurants, at the Defendants' facility located at 101 Converse Drive, Mt. Vernon, Ohio 43050.

7.     Plaintiff Ransom's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

**B.  Defendant BPC**

8.     At all times relevant, BPC is a foreign for-profit corporation authorized to do business in Ohio and conducts business in this judicial district.

9.     BPC is a subsidiary of Novolex and manufactures paper-based products, including clamshells and cartons, wraps and basket liners, and napkins for the quick service restaurant and casual dining segments of the restaurant industry on behalf of Defendant Novolex.

10.     Upon information and belief, BPC has at least two (2) Ohio facilities, located at 2000 Commerce Center, Drive, Franklin, Ohio 45005 and one at 101 Converse Drive, Mt. Vernon, Ohio 43050.

11.     As a result, at all times relevant, BPC was also an "employer" as that term is defined by the FLSA and the Ohio Acts due to its employment of Plaintiff and those similarly situated as described herein.

### C. Defendant Novolex

12.     At all times relevant, Novolex is a foreign for-profit corporation based out of Hartsville, South Carolina, but regularly conducts business in this judicial district through BPC, among other subsidiaries as outlined herein.

13.     Novolex is one of North America's leading packaging companies serving retail, grocery, food service, hospitality, institutional, and industrial markets. Based on Novolex's own website,[1] its brands include Defendant BPC, Hilex Poly, Fortune Plastics, Novolex Custom Film & Bag, Duro Bag, Bagcraft, De Luxe, General Packaging, International Converter, and Heritage Bag.

14.     Through its subsidiaries, including Defendant BPC, Novolex provides packaging services to a variety of industries outlined above.

15.     Defendants constitute an "employer" individually or a joint employer collectively of Named Plaintiff and others similarly situated as defined by the FLSA and the Ohio Acts for several reasons.

16.     First, according to public information,[2] Novolex purchased BPC's operations, including both worksites in Franklin, Ohio, and Mt. Vernon, Ohio in 2016 and has maintained responsibility for those operations since then. From that point forward, Novolex integrated BPC's operations, including its workforce, Named Plaintiff, and those similarly situated, and applied its pay policies/practices.

17.     Second, Novolex controlled the terms and conditions of employment for Named Plaintiff and others similarly situated. In so doing, Novolex was responsible for the human

---

[1] https://novolex.com/news/novolex-buys-burrows-paper-packaging-operations/ (last accessed July 24, 2020).
[2] https://novolex.com/news/novolex-buys-burrows-paper-packaging-operations/ (last accessed July 24 2020).

resources decision-making processes, including material terms and conditions of employment and other human resource operations, for Plaintiff and those similarly situated.

18. In fact, Novolex expressly states in its employee handbook that was distributed to and governing Plaintiff and those similarly situated that "this employee handbook generally describes the policies and procedures that govern the employment relationship between Novolex and any of its subsidiaries (the Company) and its employees."

19. In addition, Novolex, through its company employee handbook, also labels its employees as part of "our team" and directs all its employees to a centralized employee hotline number to report any issues arising with the company.

20. Third, Novolex is listed on Plaintiff's payroll records and is used on other business documents and/or communication with Defendants' employees in Ohio.

21. Fourth, upon information and belief, Novolex Holdings, LLC is believed to be the party that registered the Novolex trademark used on BPC's business documents and/or communication in Ohio.

22. At all relevant times, Defendants have had direct or indirect control and authority over Plaintiff's and other similarly situated employees' working conditions, including matters governing the essential terms and conditions of their employment. At all relevant times, Defendants exercised that authority and control over Plaintiff and other similarly situated employees.

23. At all relevant times, Defendants have had the authority to (and does) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records.

24.     Upon information and belief and Defendants' own business records, Defendants applied or caused to be applied substantially the same employment policies, practices, and procedures to all employees at all of its locations, including policies, practices and procedures relating to the payment of wages, overtime, and timekeeping.

25.     At all relevant times, Defendants suffered or permitted Plaintiff and other similarly situated employees to work. The work that Plaintiff and other similarly situated employees performed was for Defendants' benefit.

26.     During relevant times, each Defendant jointly maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages and overtime.

27.     During relevant times, each Defendant has jointly benefitted from the work performed by Named Plaintiff and those similarly situated.

28.     Upon information and belief, each Defendant jointly operated/operate and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and each Defendant has jointly had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

29.     In the alternative, Defendants otherwise operate as a single integrated "enterprise" as those terms are defined by the FLSA and the Ohio Acts because they maintain interrelated operations, centralized control of labor relations, common management, and financial control.

30.     Upon information and belief, Defendants apply or cause to be applied substantially the same employment policies, practices, and procedures to all employees at all of its

entities/locations, including policies, practices and procedures relating to payment of and compliance with the FLSA and Ohio law (as applicable), including overtime wages, timekeeping, maintenance of records, etc.

31.     Each of the Defendant Entities has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

32.     Upon information and belief, each Defendant, at all times relevant hereto, was jointly and fully aware of the fact that each was legally required to comply with the wage and overtime laws of the United States and of the State of Ohio.

### III.    COLLECTIVE AND CLASS ACTION ALLEGATIONS

### (Unpaid Overtime Due to Pre-Shift Donning of Personal Protective Equipment)

33.     Defendant has a policy and/or practice whereby it generally only compensates its employees for their scheduled shifts rather than for all of the time it suffered or permitted its employees to work.

34.     After Plaintiff and similarly situated employees arrived at the worksite, Defendants required them to put on personal protective equipment ("PPE") such as steel toe boots, Kevlar gloves, eye protection, hair nets, beard nets, and ear protection at the work facilities, which is all stored in locker rooms at Defendants' facilities.

35.     Defendants require Plaintiff and similarly situated employees to don the PPE to perform their job duties and to comply with the federal regulations with respect to the Occupational Safety and Health Administration's ("OSHA") standards in order to improve the safety or health of employees in the workplace, including Plaintiff, so that they are protected from injury, illness, and death caused by exposure to workplace hazards.

36.     Defendants also require Plaintiff and similarly situated employees to don PPE at its workplace because it is a facility that manufactures boxes that are used for or in connection with packaging food and therefore is required to comply with regulations of the U.S. Food and Drug Administration ("FDA").

37.     Plaintiff and other similarly situated employees are required by Defendants to wear PPE at all times while out on the production floor. Donning PPE is the first principal activity performed by Plaintiff and other similarly situated employees for each workday and begins their continuous workday. It takes Plaintiff and similarly situated others at least 10 minutes per day to don PPE.

38.     All donning is completed by Plaintiff and other similarly situated employees prior to clocking in.

**(Unpaid Overtime for Time Spent for Pre-Shift Start Up Meetings and/or Instruction)**

39.     After they have donned their PPE, but prior to clocking in, Plaintiff and similarly situated employees proceed out onto the production floor for a pre-shift start up meeting and/or instruction. At the pre-shift meeting, Plaintiff and similarly situated employees meet with the shift supervisor(s) and/or team leaders to discuss what products were running, assignment of machines, and to receive paperwork for production goals for the shift, among other miscellaneous topics of discussion prior to the scheduled start of their shift.

40.     Next, after the pre-shift start up meeting, Plaintiff and others similarly situated "punch" in/clock in[3] with a personal identification code on the timeclock system, which is located immediately in front of the factory floor door.

---

[3] For all intents and purposes of this declaration, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch" out and "clock out" also are used interchangeably and have the same meaning.

**(Unpaid Overtime for Uniform Companywide Policy that Rounds Down Compensable Hours)**

41.     Plaintiff and others similarly situated are only permitted to clock in a few minutes prior to the scheduled start of their shifts to ensure that they are not paid for any of their pre-shift work.

42.     After they clock in, Plaintiff and others similarly situated continue performing job duties for Defendants' benefit.

43.     However, Defendants have a policy/practice whereby they improperly round Plaintiff's and those similarly situated employees' punch in and punch out times down to their scheduled start and scheduled end times. The policy/practice has the net effect of undercompensating Plaintiff and those similarly situated for hours worked in violation of the FLSA.

**(Unpaid Overtime as a Result of Interrupted Meal Periods for Donning/Doffing Personal Protective Equipment)**

44.     Once clocked in, Plaintiff and similarly situated employees continued working at all times with the exception of several breaks, including an automatic 0.5-hour meal break.

45.     Defendants maintain an automatic meal deduction policy whereby they deduct a 0.5-hour meal period each day for a purported "meal period." However, Plaintiff and those similarly situated did not receive a bona fide meal period for several reasons.

46.     First, Plaintiff and other similarly situated employees are not always able to take their meal break on time because they cannot abandon their job posts. When the start of Plaintiff's and other similarly situated employees' meal break is delayed, their meal break is shortened by the time delayed until they can be relieved of their posts.

47. Next, Plaintiff's and other similarly situated employees' meal break begins by walking back to the locker rooms where they are required to take off their PPE before they can begin their meal break.

48. After an already shortened meal break, Plaintiff and other similarly situated employees must also end their meal breaks early to put their PPE back on and walk back to their posts as Defendants required their return from lunch within 0.5 hours of the start of the meal break.

49. Consequently, Plaintiff and other similarly situated employees do not receive a fully uninterrupted bona fide meal period of 0.5 hours. Nevertheless, Defendants automatically deduct a 0.5-hour daily meal break.

50. Defendants' deduction of a meal break despite that Plaintiff and other similarly situated employees do not receive an uninterrupted 0.5-hour uninterrupted meal break violates the FLSA inasmuch as the breaks do not constitute a bona fide meal period. Plaintiff and other similarly situated employees perform compensable work up to and including the doffing of their PPE at the beginning of their meal break and beginning compensable work upon donning the PPE after their shortened meal break. In other words, Plaintiff's and other similarly situated employees' meal breaks are bookended by work for which they are not compensated in violation of the FLSA.

**(Unpaid Overtime for Post-Shift Doffing of Personal Protective Equipment After Clocking Out)**

51. After returning to their posts following their shortened meal period, they continued performing their job responsibilities on the factory floor until they clocked out with the exception of breaks.

52. Once clocked out, Plaintiff and other similarly situated employees were finished performing their job duties inside of the production floor and exit it. Thereafter, Plaintiff and other

similarly situated employees proceed to the locker room where they doff their PPE before departing the premises.

53. Despite occasionally working beyond the scheduled end of their shifts on the production floor, Defendants regularly only compensated their employees for their scheduled shift. Moreover, Plaintiff and other similarly situated employees were not compensated for the off-the-clock work performed after clocking out until they doffed the required PPE even though wearing PPE is integral and indispensable to performing their job duties.

54. As set forth herein, Defendants arbitrarily failed to compensate Plaintiff and other similarly situated employees for all overtime hours worked as a result of: (1) the pre-shift of-the-work donning of required PPE on Defendants' premises; (2) attending off-the-clock pre-shift meetings; (3) rules against clocking in more than a few minutes prior to the scheduled start of the shift with rounding; (4) improper meal deductions as a result of meal breaks bookended by work; and (5) work performed after the scheduled end of employees' shifts, including off-the-clock doffing of PPE.

55. Plaintiff and other similarly situated employees performed the preceding unpaid work every workday and it should have been properly classified as part of their regular working time. This integral and indispensable unpaid work performed by Plaintiff and other similarly situated employees was practically ascertainable to Defendants.

56. There was no practical administrative difficulty of recording this integral and indispensable unpaid work of Plaintiff and other similarly situated employees.

57. This unpaid work performed by Plaintiff and other similarly situated employees constituted part of their principal activities, was required by Defendants, and was performed for Defendants' benefit.

58.     Moreover, this unpaid work was an integral and indispensable part of other principal activities performed by Plaintiff and other similarly situated employees and was part of their continuous workday.

59.     Defendants knowingly and willfully failed to pay Plaintiff and other similarly situated employees as described herein.

60.     Upon information and belief, for the three years preceding the Complaint, Defendants applied the same pay practices and policies to all hourly, non-exempt employees at their facilities, including Named Plaintiff.

61.     Finally, on May 27, 2020, Plaintiff's counsel sent via U.S. certified mail a request for Mr. Ransom's payroll and timekeeping records pursuant to Article II, Section 32a of the Ohio Constitution. The records request was sent to Defendant "Burrows Paper Corporation, c/o Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215." According to the Ohio Secretary of State's records, this is the most current address for Defendant BPC's statutory agent.

62.     On May 29, 2020, at 11:12 am, the records request was delivered to Defendant's statutory agent address listed above.

63.     However, as of the date of this Complaint, Defendants have failed to produce any records, albeit his pay or time records, with respect to Mr. Ransom.

64.     As such, Defendant BPC did not produce records in accordance with the Ohio Constitution.

65.     Defendants are in possession and control of necessary documents and information from which Plaintiff and other similarly situated employees would likely be able to calculate their on-the-clock damages. Upon information and belief, Defendants failed to record the necessary and

required information to determine all of the time that Plaintiff and other similarly situated employees spent working.

**A. 216(b) Collective Action for Unpaid Overtime Wages.**

66.    Plaintiff brings Count One of the action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

67.    The class which Plaintiff seeks to represent and for whom Plaintiff seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are members, is composed of and defined as follows:

> All current and former hourly, non-exempt production employees of Defendants who performed at least 40 hours of work in any workweek beginning three years prior to the filing of this Complaint and continuing through the date of judgment. (the "§216(b) Class" or the "§216(b) Class Members").

68.    Plaintiff is unable to presently state the exact size of the potential class, but upon information and belief aver that it consists of at least several hundred individuals.

69.    This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.  In addition to Plaintiff, numerous current and former production employees are similarly situated with regard to their wages and claims for unpaid wages and damages.  Plaintiff is representative of those other employees and are acting on behalf of their interests, as well as their own, in bringing this action.

70.    These similarly-situated employees are known to Defendants and are readily identifiable through Defendants' business and payroll records.  These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of

collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

**B. Fed.R.Civ. P. 23 Class Action for Unpaid Overtime Wages.**

71.     Plaintiff brings his Ohio Wage Act claims pursuant to Fed. R. Civ. P. 23 as a class action on behalf of himself and all other members of the following class:

> All current and former hourly, non-exempt Ohio production employees of Defendants who performed at least 40 hours of work in any workweek beginning two years prior to the filing of this Complaint and continuing through the date of judgment. (the "Rule 23 Class" or the "Rule 23 Class Members").

72.     The Rule 23 Class includes all production employed by Defendants who worked in the State of Ohio during the relevant time period above.

73.     The Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable.

74.     Plaintiff is a member of the Rule 23 Class and their claims for unpaid wages are typical of the claims of other members of the Rule 23 Class.

75.     Plaintiff will fairly and adequately represent the Rule 23 Class and the interests of all members of the Rule 23 Class.

76.     Plaintiff has no interest that are antagonistic to or in conflict with those interests of the Rule 23 Class that he has undertaken to represent.

77.     Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Rule 23 Class.

78.     Questions of law and fact are common to the Rule 23 Class.

79.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish

incompatible standards of conduct for Defendants with respect to their non-exempt production employees.

80.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) as Defendants acted or refused to act on grounds generally applicable to the Rule 23 Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Rule 23 Class as a whole.

81.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law and facts common to the Rule 23 Class predominate over questions affecting individual members of the Rule 23 Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

82.     Questions of law and fact that are common to the Rule 23 Class include, but are not limited to: (a) whether Defendants violated the Ohio Wage Act by failing to pay the Rule 23 Class for certain hours worked in excess of forty hours per week as described herein; (b) whether Defendants kept accurate records of the amount of time the Rule 23 Class was working each day; (c) whether Defendants' violations of the Ohio Wage Act were knowing and willful; (d) what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Plaintiff and other members of the Rule 23 Class on account of Defendants' violations of the Ohio Wage Act; (e) whether the unpaid and/or withheld compensation remained unpaid in violation of the OPPA; and (f) what amount of prejudgment interest is due to Rule 23 Class members on the overtime or other compensation which was withheld or not paid to them.

83.     A class action is superior to individual actions for the fair and efficient adjudication of Plaintiff's claims and will prevent undue financial, administrative and procedural burdens on the parties and the Court. Plaintiff and counsel are not aware of any pending Ohio litigation on behalf of the Rule 23 Class, as defined herein. Because the damages sustained by individual

members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendants to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV. CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - FLSA COLLECTIVE ACTION FOR UNPAID OVERTIME)

84. All of the preceding paragraphs are realleged as if fully rewritten herein.

85. This claim is brought as part of a collective action by the Named Plaintiff on behalf of himself and the §216(b) Collective Class Members against Defendants.

86. Defendants' practice and/or policy of not paying Plaintiff and other similarly situated employees for integral and indispensable work performed outside of their scheduled shifts each day violated the FLSA, 29 U.S.C. § 207, 29 CFR § 785.24.

87. Further, Defendants' practice and/or policy of not paying Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked, including: (1) the pre-shift of-the-work donning of required PPE on Defendants' premises; (2) attending off-the-clock pre-shift meetings; (3) rules against clocking in more than a few minutes prior to the scheduled start of the shift with rounding; (4) improper meal deductions as a result of meal breaks bookended by work; and (5) work performed after the scheduled end of employees' shifts, including off-the-clock doffing of PPE.

88. Defendants' failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Plaintiff and other similarly situated employees violated the FLSA, 29 CFR § 516.2(a)(7).

89.     By engaging in the above-mentioned conduct, Defendants willfully, knowingly and/or recklessly violated the provisions of the FLSA.

90.     As a result of Defendants' practices and/or policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

91.     The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay Named Plaintiff and the §216(b) Class Members is unknown at this time, as many of the records necessary to make such calculations are in the possession of Defendant and/or were not kept by Defendants.

92.     Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available, on behalf of themselves, and the §216(b) Class Members.

## COUNT II
### (O.R.C. § 4111.03 – RULE 23 CLASS ACTION FOR UNPAID OVERTIME)

93.     All of the preceding paragraphs are realleged as if fully rewritten herein.

94.     This claim is brought under Ohio law.

95.     Plaintiff and the Rule 23 Class Members have been employed by Defendants, and each Defendant is an employer covered by the overtime requirements under Ohio law.

96.     Ohio law requires that employees receive overtime compensation "not less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

97.     While employed by Defendants, Plaintiff and the Rule 23 Class Members worked in excess of the maximum weekly hours permitted under O.R.C. § 4111.03, but were not fully paid overtime wages for all such hours spent working as outlined above.

98.     As a result of Defendants' company-wide corporate policies and/or practices as described herein, it failed to pay Plaintiff and the Rule 23 Class Members all overtime wages earned resulting in unpaid overtime.

99.     Plaintiff and the Rule 23 Class were not exempt from the wage protections of Ohio law.

100.    Defendants' repeated, knowing failure to pay overtime wages to the Plaintiff and the Rule 23 Class Members were violations of O.R.C. §4111.03, and as such, Defendants willfully withheld and failed to pay the overtime compensation to which Plaintiff and the Rule 23 Class Members are entitled.

101.    For Defendants' violations of O.R.C. §4111.03, Plaintiff and the Rule 23 Class Members have suffered and continue to suffer damages. Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest, attorneys' fees, and all other remedies available, on behalf of themselves and the Rule 23 Class Members.

## <u>COUNT III</u>
### (O.R.C. § 4113.15 – RULE 23 CLASS ACTION FOR OPPA VIOLATION)

102.    All of the preceding paragraphs are realleged as if fully rewritten herein.

103.    Plaintiff and the Rule 23 Class Members have been employed by each Defendant.

104.    During relevant times, each Defendant was an entity covered by the OPPA and Plaintiffs and the Rule 23 Class Members have been employed by Defendant within the meaning of the OPPA.

105. The OPPA requires that Defendants pay Plaintiff and the Rule 23 Class Members' all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

106. During relevant times, Plaintiff and the Rule 23 Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates of pay within thirty (30) days of performing the work as outlined above. *See* O.R.C. § 4113.15(B).

107. Plaintiff and the Rule 23 Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

108. In violating the OPPA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## <u>COUNT IV</u>
## (OHIO CONST. ART. II, § 34a – FAILURE TO PRODUCE AND MAINTAIN WAGE AND HOUR RECORDS)

109. All of the preceding paragraphs are realleged as if fully rewritten herein.

110. Article II, Section 34a of the Ohio Constitution requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* Article II, Section 34 of the Ohio Constitution.

111. By "record," it means the "name, address, occupation, pay rate, hours worked for each day worked, and each amount paid an employee for a period of not less than three years following the last date the employee was employed."

112.     Pursuant to Article II, Section 34a of the Ohio Constitution, "such information shall be provided without charge to an employee or person acting on behalf of an employee upon request."

113.     A private cause of action exists to enforce the provisions of the Ohio Constitution that mandates maintaining and producing Plaintiff's records as described above.

114.     During times material to this complaint, each Defendant was a covered employer, and required to comply with the mandates of the Ohio Constitution as described herein.

115.     Plaintiff and the Rule 23 Class Members were covered employees entitled to the protection of the Ohio Constitution as described herein.

116.     As alleged above, on May 27, 2020, Plaintiff's counsel sent via U.S. Certified Mail a records request that Defendant BPC produce Plaintiff's payroll and time clock records in accordance with Article II, Section 34a of the Ohio Constitution.

117.     The records request was received[4] by Defendant BPC on or about May 29, 2020 at the statutory agent address listed in the Ohio Secretary of State records.

118.     However, as of the date of this Complaint, Plaintiff nor his counsel have received a response from Defendant BPC with respect to the records request.

119.     Defendant BPC has not produced any such records described herein.

120.     As a result, by not producing the records in accordance with the Ohio Constitution, Defendant BPC has failed to comply with the Ohio Constitution.

---

[4] The link to access the U.S. postal service website that confirms Defendant's receipt of the records request at its statutory agent address for service can be found here: https://tools.usps.com/go/TrackConfirmAction!input.action?tLabels=42043215951480659701014926805_6. (last accessed July 17, 2020).

121. Furthermore, upon information and belief, Defendant BPC's records do not reflect the time that it takes for Plaintiff and similarly situated employees to commence their first principal activity, i.e. don PPE, nor their last principal activity, i.e. doff their PPE, each day even though wearing PPE is integral and indispensable to performing their job duties and it is required by Defendant in order to perform their job duties each day.

122. As a result of Defendant BPC's violations of the Ohio Constitution, Plaintiff and those similarly situated are entitled to prove their damages by way of just and reasonable inferences, their damages, including, but not limited to, unpaid wages, an additional two times unpaid wages under Section 34a, as well as recover their attorneys' fees and costs associated with enforcing these provisions.

### COUNT V
### (O.R.C. § 2307.60 – DAMAGES ON BEHALF OF PLAINTIFF AND THE OHIO RULE 23 CLASS)

123. All of the preceding paragraphs are realleged as if fully rewritten herein.

124. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

125. By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Ohio Rule 23 Class have been injured as a result.

126. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

127. As a result of Defendants' willful violations of the FLSA, Plaintiff and the Ohio Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**V.      PRAYER FOR RELIEF**

**WHEREFORE**, Named Plaintiff requests judgment against Defendants and for an Order:

A.        Certifying the proposed FLSA collective action;

B.        Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the §216(b)

Class apprising them of the pendency of this action and permitting them to timely assert their rights

under the FLSA;

C.        Certifying the proposed Rule 23 Class under Ohio law;

D.        Finding that each Defendant has failed to keep accurate records in accordance with

the FLSA and Ohio law and that Plaintiffs, the 216(b) Class Members, and the Rule 23 Class

Members are entitled to prove their hours worked with reasonable estimates;

E.        A declaratory judgment that Defendants' wage and hour policies and/or practices

as alleged herein violate the FLSA;

F.        An order for injunctive relief ordering Defendants to end all of the illegal wage

policy and practice alleged herein pursuant to the FLSA and attendant regulations and requiring

Defendants to follow such laws going forward;

G.        Judgment against Defendants for damages for all unpaid overtime compensation

owed to Named Plaintiffs and the §216(b) Class during the applicable statutory period under the

FLSA and continuing through trial;

H.        Judgment against Defendant for liquidated damages pursuant to the FLSA in an

amount equal to all unpaid overtime compensation owed to Named Plaintiff and all other similarly

situated employees during the applicable statutory period under the FLSA and continuing through

trial;

I.        Awarding to Plaintiff and the Rule 23 Class Members unpaid compensation,

including overtime wages as to be determined at trial together with any liquidated damages

allowed by Ohio law, including but not limited to the OPPA;

J. Awarding to Plaintiff and the Rule 23 Class Members punitive, exemplary, and compensatory damages under O.R.C. §2307.60;

K.        Awarding Plaintiff, the FLSA Class Members, and the Rule 23 Class Members costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

L.        Issuing an injunction prohibiting Defendants from engaging in present, ongoing and future violations of Ohio Law;

M.        Directing Defendants to pay reasonable attorney's fees and all costs connected with this action;

N.        Leave to add additional plaintiffs;

O.        Judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

P.        Such other and further relief as to this Court may deem necessary, just or proper.

Respectfully submitted,

**COFFMAN LEGAL, LLC**                          **BRYANT LEGAL, LLC**

*/s/ Matthew J.P. Coffman*                          */s/ Daniel I. Bryant*
Matthew J.P. Coffman (0085586)          Daniel I. Bryant (0090859)
1550 Old Henderson Road                   1550 Old Henderson Road
Suite 126                                            Suite 126
Columbus, Ohio 43220                        Columbus, Ohio 43220
Phone: 614-949-1181                          Phone: 614-704-0546
Fax: 614-386-9964                             Fax: 614-573-9826
Email: mcoffman@mcoffmanlegal.com       Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and those similarly situated*

## **JURY DEMAND**

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman