**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RYAN RANSOM, on behalf of himself and others similarly situated,** | : :  : |
| Plaintiff, | : Case No. 2:20-cv-3824 : : Judge Michael H. Watson |
| v. | : : Magistrate Judge Chelsey M. Vascura |
| **BURROWS PAPER CORPORATION,** | : : |
| Defendant. | : : : |

*JOINT MOTION FOR APPROVAL OF SETTLEMENT AND
STIPULATION OF DISMISSAL WITH PREJUDICE*

## I. INTRODUCTION

Representative Plaintiff Ryan Ransom ("Plaintiff," "Representative Plaintiff," or "Ransom") and Defendant Burrows Paper Corporation ("Burrows" or "Defendant") (Plaintiff and Defendant, collectively, the "Parties") respectfully move this Court to approve the proposed opt-in settlement reached by the Parties and memorialized in the Collective Action Settlement Agreement and Release ("Settlement" or "Agreement") attached as Exhibit A.

The proposed Settlement will resolve bona fide disputes involving alleged unpaid compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("Ohio Wage Act"), the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"), and Article II, Section 34a of the Constitution of the State of Ohio ("Section 34a") (Ohio Wage Act, OPPA, and Section 34a, collectively, "Ohio Acts"). In particular, Plaintiff asserted that Defendant failed to pay Plaintiff and other alleged similarly-situated production associates for alleged off-the-clock work related to (1) pre-shift

donning of personal protective equipment; (2) pre-shift preparatory job duties, including start up meetings; (3) timeclock rounding practices; and (4) post-shift doffing of personal protective equipment.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during the course of several months of arms-length negotiations among the Parties, conducted by experienced counsel, and reached on October 18, 2021. If approved by the Court, the Settlement will make settlement payments to Plaintiff and the individual collective members who have joined this action.

The settlement documents submitted for approval or entry by the Court consist of the following:

> Exhibit A:   Collective Action Settlement Agreement and Release
>
> Exhibit B:   Declaration of Daniel I. Bryant
>
> Exhibit C:   [Proposed] Order Granting Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds. For the reasons set forth below, the Parties respectfully request that this Honorable Court approve the proposed Settlement reached by the Parties and dismiss this case with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Action

On July 30, 2020, Representative Plaintiff filed this Action as a collective action under the FLSA and the Ohio Acts and alleged that Defendant failed to pay Plaintiff and other alleged

similarly-situated production associates' overtime for hours worked over 40 in a workweek in violation of the FLSA as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy alleged violations of the Ohio Acts. (ECF No. 1) Two additional plaintiffs also joined the lawsuit on August 11, 2020 and August 27, 2020. (ECF Nos. 2 and 6) On October 23, 2020, a First Amended Complaint was filed. (ECF No. 12) In the First Amended Complaint, Plaintiff alleged that Defendant failed to pay Plaintiff and other alleged similarly-situated production associates for alleged off-the-clock work related to (1) pre-shift donning of personal protective equipment; (2) pre-shift preparatory job duties, including start up meetings; (3) timeclock rounding practices; and (4) post-shift doffing of personal protective equipment. (*Id*., PAGEID # 129-40) On November 17, 2020, Defendant filed its Answer, affirmative defenses, denied the allegations contained in the First Amended Complaint, and asserted Plaintiffs were not entitled to any compensation because they were paid for all hours worked. (ECF No. 19) Throughout the pendency of this case, Defendant has continued to deny that it violated the law. (Declaration of Daniel I. Bryant at ¶ 11-12) (hereinafter "Bryant Dec.")

After Defendant filed its Answer to the First Amended Complaint, the Parties began discussing the potential for early resolution of the action. In connection with those discussions, on November 18, 2020, the Parties stipulated to conditional certification and requested that the Court authorize notice to be sent to all current and former hourly, non-exempt production employees of Defendant who performed at least 40 hours of work in any workweek beginning three years prior to the date of any order approving conditional certification through the present. (ECF No. 20, PAGEID # 188) The Parties also requested that the Court authorize a notice period of seventy-five (75) days. (*Id*.) The Court granted the Parties joint stipulation to conditional certification on November 20, 2020. (ECF No. 21) Thereafter, Notice was distributed to approximately 1,076 FLSA putative class members. On February 27, 2021, the notice period ended and sixty-seven (67)

additional production associates ("Opt-In Plaintiffs") joined the lawsuit. (*See* ECF Nos. 26-33) In total, there are seventy (70) participants in this case ("Opt-In Plaintiffs" and "Representative Plaintiff," collectively, "Plaintiffs"). (Bryant Dec. at ¶ 11-12)

### B. Negotiation of The Settlement

Beginning in March, 2021 and continuing through October, 2021, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. (Ex. B, Bryant Dec., ¶ 13) This included dates of employment, time and pay data for Plaintiffs, and calculation of their alleged overtime damages. (*Id*.) The Parties engaged in extensive legal discussion and correspondence, which included numerous and lengthy discussions and written communications. (*Id*.) Counsel for the Parties also constructed their own damages models using the data produced by Defendant. After months of arms-length negotiations, on October 18, 2021, the Parties reached an agreement to settle the Action on the terms set forth in the Agreement attached as Exhibit A. (*Id*. at ¶ 14-16) The Parties reached the proposed settlement in this matter after extensive research, payroll data analysis, legal debates, discussions, and correspondence, and after good faith bargaining. (*Id*.)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Plaintiffs identified in Appendix 1 of the Agreement.

The Total Settlement Amount is One Hundred Twenty-Nine Thousand Seven Hundred Twenty-Five Dollars and Seventy-Six Cents ($129,725.76), which sum will cover: (a) all of the Individual Payments to Plaintiff and the Opt-In Plaintiffs; (b) Representative Plaintiff's Service Payment; and (c) Plaintiffs' attorneys' fees and expenses, including half of the expenses (in the

total amount of $8,576.38[1]) for sending notice to the putative collective members and administering the settlement. (Ex. B, Bryant Dec., ¶ 17) The other half of the expenses associated with providing notice to all putative collective members and administering the settlement in the amount of $4,288.19 will be covered by Defendant separately in addition to the Total Settlement Amount. (*Id.*)

As to the Individual Payments, Plaintiffs maintained that the job duties alleged in the First Amended Complaint took approximately thirty (30) minutes per day. (Ex. B, Bryant Dec., ¶ 18) Seventy-Six Thousand Six Hundred Sixty-Eight Dollars and Twenty-Five Cents ($76,668.25) of the Total Settlement Amount will be divided into Individual Payments to the Plaintiffs. (*Id.*) The Individual Payments were calculated proportionally on each plaintiff's alleged overtime damages during the Calculation Period, which began from November 20, 2017 up through and including the dates upon which each Opt-In Plaintiff's Consent Form was filed with the Court, unless an individual's employment was ended earlier, in which case that date would apply. (*Id.*) Although Plaintiffs did not likely work 40 or more hours every single week, each workweek was potentially eligible for the purposes of computing damages. (*Id.*) Based on Plaintiff's calculations, Plaintiff alleges that he and the Opt-In Plaintiffs are owed approximately $76,163.46 in unpaid overtime compensation. (*Id.*) Based on the approximate amount of time Plaintiffs allege they are owed during the Calculation Period and faced with the risk factors of possibly receiving nothing, Plaintiffs believe they will receive a value of over 100% of their total alleged unpaid overtime wages.[2] (*Id.*) Defendant, of course, disputes Plaintiff's calculations and vigorously maintains that the Plaintiff and Opt-In Plaintiffs are owed zero dollars because they did not perform *any* off-the-clock or otherwise uncompensated work as alleged in the First Amended Complaint. (*Id.*)

---

[1] $4,714.38 for sending notice and $3,862.00 for administering the settlement.
[2] After deducting attorneys' fees, costs, and the service award, the remaining amount to the Plaintiffs is $76,668.25.

The Claims Administrator shall allocate 50% of each Plaintiff's Individual Payment to alleged lost wage damages, and this amount will be subject to all legally required deductions and reported on IRS Form W-2. (Ex. A, Settlement Agreement, ¶ 46; Ex. B, Bryant Dec., ¶ 19) The Claims Administrator shall also allocate the remaining 50% of each Plaintiff's Individual Payment to alleged liquidated damages, and this amount will be reported on IRS Form 1099. (*Id.*) Any Individual Payments to Plaintiffs that are not cashed within one hundred eighty (180) days will revert back Defendant, and the Agreement shall remain binding on Plaintiff or any Opt-In Plaintiffs who failed to negotiate their Settlement Award check. (*Id.*)

Five Thousand Dollars ($5,000.00) of the Total Settlement Amount will be paid to Representative Plaintiff Ryan Ransom, in addition to his Individual Payment, for his service as the Representative Plaintiff. (Ex. A, ¶ 28; Ex. B, Bryant Dec., ¶ 20) In addition, Forty-Three Thousand Two Hundred Forty-One Dollars and Ninety-Two Cents ($43,241.92) of the Total Settlement Amount will be paid to Plaintiffs' Counsel for attorneys' fees and $527.40 will be paid to Plaintiffs' Counsel for expenses incurred in the Action. (*Id.*) Finally, the Total Settlement Amount will cover one-half (½) of the third-party administrator's expenses, or $4,288.19. (*Id.*) The other ½ of the expenses in the amount of $4,288.19 will be covered by Defendant separately outside of the Total Settlement Amount (*Id.*)

In exchange for the total settlement amount and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and Representative Plaintiff and Opt-In Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, under the FLSA, the Ohio Acts, or any other applicable federal, state or local wage-and-hour law relating to unpaid and/or untimely payment of wages, overtime, or compensation of any kind, any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), and any claims

for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and service awards. (Ex. A, ¶ 15; Ex. B, Bryant Dec., ¶ 20)

### III. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b). Court approval is warranted.

#### A. The Seven-Factor Standard Is Satisfied

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it finds that the settlement is "fair, reasonable, and adequate." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *11 (S.D. Ohio Sep. 25, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* "While these factors are helpful in guiding the analysis, the 'fairness of each settlement turns in large part on the bona fides of the parties' legal dispute,' that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *5 (N.D. Ohio Mar. 26, 2019) (quoting *UAW*, 497 F.3d at 631). Application of these principles to this settlement demonstrates that approval is warranted.

#### 1. No Indicia of Fraud or Collusion

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *14. Here, the Agreement was achieved only after many months of arms-length and good faith

negotiations between the Parties, after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue.  As such, because there is no indicia of fraud or collusion, this factor favors approval of the settlement.

### 2. Complexity, Expense and Duration of Litigation Favor Approval

The policy favoring the settlement of collective actions applies here. Wage-and-hour cases are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).  Moreover, the Parties disagree over the merits of Plaintiff's claims, including whether the alleged off-the-clock work is compensable, whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiff and the Opt-In Plaintiffs would be entitled to liquidated damages if they were to prevail on the merits.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Plaintiff and the Opt-In Plaintiffs promptly and efficiently, and now instead of some unknown time possibly far off in the future.

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Defendant produced timekeeping and payroll records, and both Parties used those same records to create their own damages model. Both parties also conducted their own independent investigations of Plaintiff's allegations and claims.  As such, both of the Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Plaintiff prevail on the claims, which allowed the Parties to negotiate a settlement based on facts and data.

Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4. The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but also recognize that protracted litigation will be uncertain in terms of duration, cost, and result. Moreover, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that Plaintiff and the Opt-In Plaintiffs would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the settlement. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *18 ("the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor").

### 5. Class Counsel and the Plaintiff Favor Approval

The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Plaintiff's Counsel supports the Settlement as fair and reasonable, and in the best interest of Plaintiff and the class as a whole, as described in the Declaration of Daniel I. Bryant. Plaintiff also approves of the Settlement. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members

If the Court approves the settlement, only Plaintiff and the Opt-In Plaintiffs will be bound by the Agreement. Those that do not join the case will not.

### 7. The Public Interest

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than risk the uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiff and Opt-In Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

All Individual Payments will be calculated proportionally on each plaintiff's alleged overtime damages during the applicable period. If approved by the Court, the settlement will provide adequate payments to Plaintiffs for alleged unpaid overtime compensation. As described in the Declaration of Daniel I. Bryant, based upon Plaintiff's calculations, Plaintiffs will receive Individual Payments that exceed the value of thirty (30) minutes of allegedly unpaid work per day during the applicable Calculation Period. (*See* Ex. B, Bryant Dec., ¶ 18) Accordingly, the settlement proceeds are fair, reasonable and adequate.

## C. The Service Award Is Proper and Reasonable

Reasonable service awards "are common in class action settlement[s]and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*26 (citing *Rotuna v. West Customer Mgmt. Group*, LLC,No. 4:09cv1608, 2010 WL 2490989, at \*7. *Accord*, *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award of $5,000 to Plaintiff provides reasonable recognition for his assistance to Plaintiffs' Counsel and his substantial efforts to achieving the settlement on behalf of Plaintiffs. (Ex. B, Bryant Dec., ¶ 20)

## D. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*28 (the fee award must be "adequate to attract competent

11

counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In *Gascho v. Global Fitness Holdings, Inc.*, 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed its long-standing rule regarding class- and collective-action fee awards. "When awarding attorney's fees in a class action," *Gascho* emphasized, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Court have discretion to select the appropriate method of determining such fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516).

The percentage approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80. It is appropriate in cases like this one because "it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516-17).

This Court, and other courts in the Sixth Circuit, commonly approve one-third fee awards in FLSA collective actions. *See, e.g.*, *Croskey v. Hogan Services, Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (finding attorneys' fees in the amount of one-third of the total settlement amount are reasonable) (citing *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District.")); *Bailey v. Black Tie Management Co, LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J); *Perkins v. Evolved, Inc.*, No. 2:16-cv-724, 2017 WL 2987220, at *1 (S.D. Ohio June 13, 2017) (Graham, J.); *Campbell v. Wise Medical Staffing, Inc.*, No. 2:18-cv-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) (Morrison, J).

12

Courts reference the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000); *See Dillworth*, 2010 WL 776933, at *19-20; *Bessey*. 2007 WL 3173972, at *4 (citing study conducted by the National Economic Research Associates). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study).

Measured by the NERA benchmarks, Plaintiff's Counsel contends that the settlement primarily benefits Plaintiffs. *See Gascho*, 822 F.3d at 282 (counseling courts to consider "the benefit to the class and its ratio to attorney's fees"). As explained above, based upon Plaintiffs' calculations, Individual Payments represent the full value of the approximate alleged unpaid overtime they could have recovered. (Ex. B, Bryant Dec., ¶ 18, 27, and 34) *See Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *3-9 (N.D. Ohio Sept. 13, 2021) (Helmick, J.) (describing recovery of 42% of the alleged overtime damages as an "excellent result" in the final approval Order because it represented "substantial relief" to the impacted individuals); *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 2021 WL 129067 (6th Cir. Jan. 14, 2021) (describing a "substantial recovery" when the individuals received 32% of alleged damages after deduction for fees and expenses). Per the agreement, Plaintiff requests payment of attorneys' fees to Plaintiffs' Counsel of one-third of the total settlement amount, or Forty-Three Thousand Two Hundred Forty-One and Ninety-two Cents ($43,241.92). In addition, Plaintiffs' Counsel is seeking Four Thousand Eight Hundred Fifteen and Fifty-Nine Cents ($4,815.59). Consequently, just over one-third of the settlement is allocated to Class Counsel to cover attorney's fees and litigation costs combined. (Ex. B, Bryant Dec. ¶ 30-36) That amount "reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80. The settlement achieved by

Plaintiffs' counsel's efforts exceeds the threshold for what constitutes a substantial recovery for Plaintiffs.

## IV. CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order Granting Joint Motion for Approval of FLSA Collective Action Settlement and Dismissal with Prejudice attached as Exhibit C.

| | |
|---|---|
| **BRYANT LEGAL, LLC** | **FISHER & PHILLIPS LLP** |
| */s/ Daniel I. Bryant* | */s/ Mathew A. Parker* |
| Daniel I. Bryant (0090859) | Mathew A. Parker (0093231) |
| 1550 Old Henderson Road | Curtis G. Moore (0091209) |
| Suite 126 | 250 West Street, Suite 400 |
| Columbus, Ohio 43220 | Columbus, Ohio 43215 |
| Phone: 614-704-0546 | Phone: (614) 221-1425 |
| Fax: 614-573-9826 | Fax: (614) 221-1409 |
| Email: dbryant@bryantlegalllc.com | Email: mparker@fisherphillips.com |
| | cmoore@fisherphillips.com |
| **COFFMAN LEGAL, LLC** | *Attorneys for Defendant* |
| */s/ Matthew J.P. Coffman* | |
| Matthew J.P. Coffman (0085586) | |
| 1550 Old Henderson Road | |
| Suite 126 | |
| Columbus, Ohio 43220 | |
| Phone: 614-949-1181 | |
| Fax: 614-386-9964 | |
| Email: mcoffman@mcoffmanlegal.com | |
| *Attorneys for Named Plaintiff and those similarly situated* | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                       */s/ Daniel I. Bryant*
                                                       Daniel I. Bryant (0090859)